THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. MAURICE MITCHELL, Petitioner-Appellant.

First District (2nd Division)   No. 1—88—2911

Opinion filed October 15, 1991.—Rehearing denied December 2, 1991.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Judith Hannah, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Maurice Mitchell (Maurice) appeals from what he claims was the circuit court's improper dismissal of his post-conviction petition as "frivolous or *** patently without merit" more than 30 days after it was filed and docketed. He maintains that the allegations in his petition should have been given the benefit of an evidentiary hearing: (1) that the court before which he was convicted of murder erroneously refused to instruct the jury that it could find that he had used force in defense of himself, or that he could be guilty of voluntary manslaughter (serious provocation by victim), voluntary manslaughter (unreasonable belief that the use of force was justified), or involuntary manslaughter; and (2) that the State improperly discriminated against black venirepersons in exercising its peremptory challenges during jury selection. He seeks reversal of the court's dismissal, and either: reversal of his conviction with a remand for a new trial, a remand for a hearing on his claim of discrimination during *voir dire*, or a hearing on the merits of his petition.

Following a jury trial, Maurice was convicted of the murder of his wife, Debra, and was sentenced to 40 years in the custody of the Illinois Department of Corrections. After his conviction was affirmed in *People v. Mitchell* (1987), 163 Ill. App. 3d 58, Maurice, as noted above, filed a petition for a post-conviction hearing. The "Notice/Proof of Service" accompanying the petition states that it was forwarded to the clerk of the Cook County circuit court on August 10, 1988. The clerk, however, stamped it as having been filed on August 15, 1988. The petition was dismissed on September 14, 1988.

Maurice's first contention is that the circuit court erred when it summarily dismissed his petition, arguing that such order was entered more than 30 days after the petition was filed and docketed.

He asserts that August 10, 1988, the date on which the petition was notarized as having been forwarded to the clerk, and not August 15, 1988, the date on which the clerk stamped the petition as having been filed, should control as the date it was "filed and docketed." The State responds that the latter date should govern.

■■ Section 122—2.1 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 122—2.1) states:

> "(a) Within 30 days after the filing and docketing of each petition [for a post-conviction hearing], the court shall examine such petition and enter an order thereon pursuant to this Section. If the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order ***.
>
> (b) If the petition is not dismissed pursuant to this Section, the court shall order the petition to be docketed for further consideration in accordance with Sections 122—4 through 122—6."

The court in *People v. Byers* (1990), 196 Ill. App. 3d 502, 509, held that the 30-day period begins when the petition is filed, even if, at a later date, it is "docketed on the trial court's call." While the issue in the instant case was not addressed in *Byers* or in *People v. Phillips* (1989), 183 Ill. App. 3d 417, we note that in *Byers*, the date of filing was assumed to be the date on which the petition "was file stamped" (*Byers*, 196 Ill. App. 3d at 509), and in *Phillips*, the date on which it was filed "by the circuit clerk." (*Phillips*, 183 Ill. App. 3d at 421.) In light of the holding in these cases and the plain meaning of the statute, we rule that in the instant case the clerk's filing stamp, and not a notarization that the petition was "forward[ed] to" the clerk on a specific date, should determine the date of filing.

This holding does not conflict, as Maurice implies, with the "pro-mailing" policy expressed in *People v. Pagel* (1990), 197 Ill. App. 3d 305, 307, which held that for purposes of determining the timeliness of the filing of a post-trial "motion to withdraw [a] guilty plea," the date on which it is notarized as having been sent, and not the date on which it is postmarked, is controlling. *Pagel* based its holding on *Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 340-42, which held "that notices of appeal mailed within the 30-day period [following entry of the judgment appealed from] and received thereafter are timely filed." The court noted that "while older case law has held that papers are not filed until actually committed to the control and custody of the

clerk [citation], more recent authority suggests that this rule should be modified to take into account the widespread practice of filing documents by mail." (126 Ill. 2d at 340.) It compared the filing of a notice of appeal with the "filing [of] records, briefs or other papers required to be filed within a specified time," which according to Supreme Court Rule 373 (107 Ill. 2d R. 373) were considered filed when mailed. Supreme Court Rule 373 "was designed to make it unnecessary for counsel to make sure that briefs and other papers mailed before the filing date actually reach the reviewing court within the time limit" (107 Ill. 2d R. 373, Committee Comments, at 476). The court also explained:

> "[A] liberal pro-mailing policy is more equitable, since it places smaller firms which may lack telefax machines and messenger services on an equal footing with their larger competitors. We express no opinion as to whether the same policy would apply to other papers filed in the circuit court, such as post-trial motions." (*Harrisburg*, 126 Ill. 2d at 342.)

Our holding in the case at bar disregards none of the concerns expressed in *Harrisburg-Raleigh Airport*. Instead, it simply requires the court to "examine [the] petition and enter an order thereon" within the 30-day period which is clearly specified in the statute and it does not prejudice the petitioner in any way. Accordingly, we hold that in dismissing the petition on September 14, 1988, the court complied faithfully with the time provisions of the statute.

Next, Maurice alleges that the circuit court erred in dismissing, as "frivolous or *** patently without merit," his claim that he was improperly refused certain jury instructions during his trial. The State first responds that a trial court's failure to tender a particular instruction is not cognizable in a post-conviction hearing.

Section 122—1 of the Code states:

> "Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article." Ill. Rev. Stat. 1987, ch. 38, par. 122—1.

The failure to give required jury instructions is cognizable in a post-conviction hearing when the failure "potentially violate[s] the constitutional right to have the jury adequately apprised of the appropriate law." (*People v. Flowers* (1990), 138 Ill. 2d 218, 236.) In *Flowers*, the petitioner claimed that although the jury was instructed on both murder and voluntary manslaughter (unreasonable

belief that killing was justified), it was error not to inform it that in order to convict him of murder, "the State must prove that the defendant did not believe circumstances existed which justified the use of the force that he used." (138 Ill. 2d at 225-26.) The claim was held to be cognizable even though the requirement that the State prove that element was imposed by the applicable statute and not by the United States or Illinois constitutions, apparently because the instructions failed to apprise the jury of part of the State's burden of proof, an apprisal " 'essential to a fair trial' " (quoting *People v. Reddick* (1988), 123 Ill. 2d 184, 198). *Flowers*, 138 Ill. 2d at 235-37.

■ In the instant case, the claim is not that the jury was misinformed about the burden of proof imposed upon the State for a murder conviction, but rather that the jury was not informed about the possibility of convicting Maurice on the lesser charge of voluntary manslaughter or involuntary manslaughter, or of acquitting him entirely on the ground of self-defense. Maurice cites no authority holding that such a failure raises a "constitutional" question. We hold, however, that it does raise such a question and is therefore cognizable in a post-conviction proceeding.

*Beck v. Alabama* (1980), 447 U.S. 625, 65 L. Ed. 2d 392, 100 S. Ct. 2382, is authority for the proposition that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [a State] is constitutionally prohibited from withdrawing that option from the jury in a capital case." (447 U.S. at 638, 65 L. Ed. 2d at 403, 100 S. Ct. at 2390.) The Court, however, declined to decide "whether the Due Process Clause [(U.S. Const. amend. XIV, §1)] would require the giving of such instructions in a noncapital case." 447 U.S. at 638 n.14, 65 L. Ed. 2d at 403 n.14, 100 S. Ct. at 2390 n.14.

In *People v. Bryant* (1986), 113 Ill. 2d 497, 502, the court held:

> "[A] defendant may be entitled to have the jury instructed on a less serious offense that is included in the one he is charged with. [Citing *Beck*, 447 U.S. at 636-37, 65 L. Ed. 2d at 401-02, 100 S. Ct. at 2388-89.] The reason for this is clear: an instruction on a lesser offense provides an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense."

Further, *People v. Joyner* (1972), 50 Ill. 2d 302, held that "in homicide cases, if there is evidence in the record which, if believed by

the jury, would reduce the crime to manslaughter, an instruction defining that crime should be given, if requested." (50 Ill. 2d at 306.) Failure to so instruct, the court noted, and thus failure to fulfill "the requirement that the jury be fully and properly instructed," was held to be so "important with reference to the fundamental fairness of [defendants'] trial *** [that it] necessitate[d] a remand for a new trial." 50 Ill. 2d at 307.

Although in neither *Bryant* nor *Joyner* did the court state that the rule regarding instruction on lesser included offenses was constitutionally required, we fail to apprehend any difference between the "constitutional right to have the jury adequately apprised of the appropriate law" discussed in *Flowers* (138 Ill. 2d at 236), and the "requirement that the jury be fully and properly instructed" discussed in *Joyner* (50 Ill. 2d at 307). Accordingly, and especially in light of the *Bryant* court's reliance upon the due process discussion in *Beck* (*Bryant*, 113 Ill. 2d at 502), we hold that the alleged impropriety of the trial court's refusal to instruct the jury on voluntary or involuntary manslaughter is cognizable in a post-conviction proceeding. Because a successful claim of self-defense would have certainly resulted in Maurice's acquittal rather than in his mere conviction for a lesser offense, it follows that the issue of the trial court's failure to instruct the jury on that defense is also cognizable in a post-conviction proceeding. See *People v. Fryman* (1954), 4 Ill. 2d 224, 231 ("[A] defendant is entitled to the benefit of any defense shown by the entire evidence").

Nevertheless, the State argues, the issues presented by the refusal to tender the requested instructions are *res judicata*, as they were decided on direct appeal in *Mitchell*, and legal developments subsequent to *Mitchell* do not call into question that court's disposition of the issue; accordingly, the trial court correctly dismissed that portion of Maurice's petition without further hearing.

■ As the court held in *People v. Owens* (1989), 129 Ill. 2d 303, 308, "[T]he scope of post-conviction review is limited to issues which have not been, and could not have been, previously adjudicated [citation]." "[A]ll issues actually decided on direct appeal are *res judicata* ***." *People v. Stewart* (1988), 123 Ill. 2d 368, 372.

Maurice admits that the court in *Mitchell* decided whether the trial court erred in refusing to submit the disputed instructions. Nevertheless, he maintains, *res judicata* does not bar an issue from being reexamined on the merits when "fundamental fairness so requires." (*People v. Neal* (1990), 142 Ill. 2d 140, 146.) Moreover, *res judicata* is not a bar when "the right relied on has been recognized

for the first time after the direct appeal." (*People v. Ikerd* (1970), 47 Ill. 2d 211, 212.) He cites several cases which illustrate this approach.

In *People v. Strader* (1967), 38 Ill. 2d 93, the court which had affirmed the defendant's conviction on direct appeal had held that even if the defendant had been coerced into making a confession which was admitted at trial, he had not been prejudiced by the admission of the statement. Subsequent to the affirmance, however, *Jackson v. Denno* (1964), 378 U.S. 368, 376, 12 L. Ed. 2d 908, 915, 84 S. Ct. 1774, 1780, held that a conviction may not be "founded, in whole or in part, upon an involuntary confession *** even though there is ample evidence aside from the confession to support the conviction." The rule in *Jackson* was held in *Boles v. Stevenson* (1964), 379 U.S. 43, 45, 13 L. Ed. 2d 109, 111, 85 S. Ct. 174, 176, to apply retroactively. Accordingly, the issue was not *res judicata* and could be addressed in a post-conviction petition. *Strader*, 38 Ill. 2d at 94-97.

Next, in *People v. Hopkins* (1976), 41 Ill. App. 3d 430, although the defendant's sentence had been affirmed on direct appeal against a claim that it was excessive, the court had failed to discuss the effect of the Unified Code of Corrections (Unified Code) (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*), which had become effective before disposition of the defendant's appeal. Subsequently, several Illinois Supreme Court decisions held that the Unified Code should govern the length of the sentences of persons whose appeals were pending when it became law. Accordingly, *res judicata* was held not to apply. *Hopkins*, 41 Ill. App. 3d at 431-32.

Finally, in *People v. Cowherd* (1983), 114 Ill. App. 3d 894, 896, the defendant's conviction was upheld against a claim that prejudicial error had been committed when a police detective testified at trial "to statements made by the defendant and referred to certain plea negotiations with defendant." The court had "concluded that the rule [excluding such testimony] contemplate[d] *** actual plea discussions between the accused and the competent State authorities charged with the negotiations of guilty pleas and sentences." (114 Ill. App. 3d at 898.) Subsequently, *People v. Hill* (1980), 78 Ill. 2d 465, 473, held that the fact that the party to whom a plea-related statement was made did not have the actual authority to enter negotiations is not, standing by itself, sufficient to render the statement admissible. Accordingly, *res judicata* was held not to apply. *Cowherd*, 114 Ill. App. 3d at 896-98.

Applying the principles of the foregoing cases to Maurice's claim that the trial court erred in not submitting the disputed instructions to the jury, we hold that *res judicata* bars reexamination of this issue. The court held in *Mitchell* that

"the trial court should have given these instructions if there was even very slight evidence presented which might legitimately lead a jury to the conclusion that Maurice committed voluntary manslaughter, involuntary manslaughter, or acted in self-defense. [Citations.]

The defense has not met the above requirement." (*Mitchell*, 163 Ill. App. 3d at 66-67.)

The court then considered Maurice's complaint regarding the trial judge's refusal to give instructions on self-defense and on voluntary manslaughter (unreasonable belief that the use of force was justified), holding:

"The evidence adduced at trial by the People was totally consistent with a murder charge. Especially noteworthy is the fact that *** [the wound inflicted upon Debra] is not the type of wound generally inflicted by an individual acting in self-defense. Moreover, the defendant himself testified that the killing was an accident."

The court further noted that although a witness had testified at trial that Maurice had told her that he had killed Debra in a fight, this statement was inconsistent with another statement he made to her that Debra had cut herself. The court held that under such circumstances, the testimony that he had killed Debra in a fight "is not by itself enough evidence to warrant a voluntary manslaughter instruction." The court quoted *People v. Bratcher* (1976), 63 Ill. 2d 534, 540-41: " 'To hold otherwise would permit a defendant to demand unlimited instructions, which are wholly unrelated to the case but are based upon *the merest factual reference* or witness' comment.' (Emphasis added.)" *Mitchell*, 163 Ill. App. 3d at 67.

None of the cases cited by Maurice which were decided subsequent to *Mitchell* warrant reexamination of this issue. *People v. Robinson* (1987), 163 Ill. App. 3d 754, 770, held that a jury should have been instructed on self-defense when the defendant testified

"that he had become frightened by the victim's yelling at him and that as he then grabbed for the shotgun to defend himself and struggled over it with a companion of the victim, who had produced it, the shotgun fell and accidentally discharged, killing the victim." (163 Ill. App. 3d at 770.)

*Robinson,* however, distinguished *Mitchell* on the ground that although Maurice had testified that he had intentionally struggled with a victim who was wielding a knife, but that the ensuing fatal wound was accidental, his testimony showed not that he was attempting to defend himself but that he intended to secure the knife. Moreover, there was evidence that he had made statements to a witness which contradicted his trial testimony, and finally, the wound was inconsistent with a claim of self-defense. *Robinson,* 163 Ill. App. 3d at 771 n.1.

*People v. Whitelow* (1987), 162 Ill. App. 3d 626, 630-31, is similar to *Robinson.* In *Whitelow,* there had been trial evidence that the defendant had grabbed a gun while fleeing from the victim, who had beaten him earlier, and from another person, who had a broken bottle in his hand, and the gun was alleged to have accidentally discharged. *Whitelow* does not show a departure from the principles followed in *Mitchell.* Finally, the court in *People v. Everette* (1990), 141 Ill. 2d 147, enunciated no new rule of law which would warrant lifting the bar of *res judicata. Everette* reaffirmed the admonition in *Bratcher,* upon which *Mitchell* had relied (*Mitchell,* 163 Ill. App. 3d at 67), against tendering instructions "based upon the merest factual reference or witness' comment." (*Everette,* 141 Ill. 2d at 157.) Moreover, the court in *Everette,* which affirmed a trial court's refusal to instruct a jury on self-defense, specifically approved of *Robinson:*

> "[T]hose decisions which refused to instruct the jury as to self-defense did so because there was insufficient evidence in the record to support the instruction and not because there was an inherent or definitional contradiction in the defenses [of self-defense and accident]. *** Those cases that allowed the jury to be charged with self-defense instructions had demonstrated in the record evidence to support both defenses." 141 Ill. 2d at 154-55.

In discussing Maurice's claim that the trial court erred in refusing his instruction on voluntary manslaughter (serious provocation by victim), the court in *Mitchell* distinguished *People v. Pietryzk* (1987), 153 Ill. App. 3d 428, on the ground that "in *Pietryzk* the defendant conceded that he intended to cause injury and that the victim's death was not an accident." (*Mitchell,* 163 Ill. App. 3d at 68.) It also cited *People v. Phillips* (1987), 159 Ill. App. 3d 142, in which a new trial was ordered

> "because the circuit court failed to give an instruction on voluntary manslaughter-sudden passion, despite the defendant's

testimony that he purposely acted after a disagreement with the deceased. In *Phillips* there was some evidence that the defendant had the intent to cause serious bodily harm; thus, a voluntary manslaughter instruction should have been given. In the instant case, however, there was insufficient evidence before the jury to satisfy the intent element of the crime of voluntary manslaughter \*\*\*." (*Mitchell*, 163 Ill. App. 3d at 68.)

In furtherance of his attempt to thwart the application of *res judicata* on this issue, Maurice relies upon *Reddick* (123 Ill. 2d 184) and *People v. Healy* (1988), 168 Ill. App. 3d 349, both decided after *Mitchell*. We note, however, that Maurice's argument relies upon the *Mitchell* court's overstatement of the holding in *Phillips*. In *Phillips*, the State had misstatement to prove "that defendant stabbed Roberts [the victim] without provocation and had gone into his office [wherein the stabbing occurred] with the intent of stabbing him." (159 Ill. App. 3d at 148.) The defendant had testified "that he armed himself with the knife only for the purpose of frightening Roberts so he would quit harassing him with no intent of using it. \*\*\* [And] that Roberts grabbed the knife from defendant's waistband and that Roberts attempted to stab him." (159 Ill. App. 3d at 148.) The *Phillips* court held that a voluntary manslaughter instruction was required not because "there was some evidence that the defendant had the intent to cause serious bodily harm," as stated in *Mitchell* (163 Ill. App. 3d at 68), but rather because there was evidence that the defendant had not "entered the combat with the intention of using the knife," and had killed the victim because he had been provoked by him in the course of mutual combat. *Phillips*, 159 Ill. App. 3d at 148-49.

In view of the foregoing, it is clear to us that when the court in *Mitchell* discussed "the intent element of the crime of voluntary manslaughter" (*Mitchell*, 163 Ill. App. 3d at 68), it was not basing its decision, as Maurice asserts, on the erroneous supposition that voluntary manslaughter instructions were not required because there was not " 'some evidence' that he intended to and did stab the deceased [citation], or that he intended to cause seriously [*sic*] bodily harm" (quoting *Mitchell*, 163 Ill. App. 3d at 68); Maurice concedes that there was evidence of this intent. Rather, the court based its decision on the lack of evidence that the intent to kill or to cause serious bodily harm resulted from *provocation* by the victim.

Neither *Reddick* nor *Healy* provides any new rule which would justify lifting the bar of *res judicata* on this issue. *Reddick* merely noted that "if a defendant in a murder trial presents sufficient evidence to raise [the issue of intense passion, so as to] reduce the charge of murder to voluntary manslaughter, then to sustain the murder conviction, the People must prove beyond a reasonable doubt that those defenses are meritless, and must also prove beyond a reasonable doubt the statutory elements of murder [which include the element of intent]." (*Reddick*, 123 Ill. 2d at 197.) In *Healy*, the court held that the jury should have been instructed on voluntary manslaughter (serious provocation by victim) because there "was evidence at trial that both men [the defendant and the victim] were intoxicated and *** that both men were pushing and shoving each other." Additionally, there was evidence that the victim had attacked both the defendant and his companion. (*Healy*, 168 Ill. App. 3d at 353.) *Healy*, however, neither enunciated a new rule of law nor recognized a new right; it based its holding on the rule that "mutual combat is recognized in Illinois as adequate provocation, sufficient to reduce a homicide to voluntary manslaughter" and on the rule that "intoxication of the parties engaged in combat may contribute to a finding of voluntary manslaughter" (168 Ill. App. 3d at 353), both of which rules were recognized and applied in *Pietryzk*. (*Pietryzk*, 153 Ill. App. 3d at 435-36.) Accordingly, *res judicata* bars reexamination of this issue.

Finally, the *Mitchell* court addressed Maurice's claim that the trial court erred in refusing his instructions on involuntary manslaughter:

"[T]here was inadequate evidence of the requisite intent: recklessness. The defendant can point to no evidence in the record that suggests that he acted in conscious disregard of a risk. [Citations.] On the contrary, according to his testimony he was attempting to eliminate, or at least to mitigate, a risk by getting the knife away from Debra." (*Mitchell*, 163 Ill. App. 3d at 68.)

None of the later cases upon which Maurice relies, however, calls into question the propriety of the court's holding. (See *People v. Banks* (1989), 192 Ill. App. 3d 986, 996-97; *People v. Consago* (1988), 170 Ill. App. 3d 982, 985-86; *Robinson*, 163 Ill. App. 3d at 778-79.) Consequently, reconsideration of that issue is also barred by *res judicata*.

Maurice's next claim is that the circuit court erred in summarily dismissing that part of his petition relating to his claim that at his

original trial, the State improperly discriminated against black venirepersons in exercising peremptory challenges during the *voir dire*. Here again, the State replies that this issue is *res judicata* as a result of its having been decided adversely to Maurice on direct appeal.

■ During the selection of the jury, Maurice unsuccessfully moved for a mistrial on the ground that the prosecution had, at that point, exercised three of its four peremptory challenges to exclude black people from the jury. After the State had exercised its sixth and seventh peremptory challenges, Maurice renewed his motion for a mistrial on the ground that "[t]he State is systematically excluding Black people from this jury." This motion was also denied.

On appeal in *Mitchell*, the court held:

"Since the record does not indicate the race of the prospective jurors, this court cannot determine whether the People purposefully discriminated against blacks when picking the jury \*\*\*. \*\*\*

In the case *sub judice* \*\*\* the only record of the race of the excluded jurors is the statement of defense counsel. Neither is there any record of the race of the remainder of the venire. Without such information, the defendant has not made a *prima facie* case of purposeful discrimination. [Citation.] Consequently, he has waived the \*\*\* issue." (*Mitchell*, 163 Ill. App. 3d at 69.)

The rule on which Maurice's claim on direct appeal relied, that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial" (*Batson v. Kentucky* (1986), 476 U.S. 79, 96, 90 L. Ed. 2d 69, 87, 106 S. Ct. 1712, 1723), was decided after his conviction but before his appeal was decided. *Griffith v. Kentucky* (1987), 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661, 107 S. Ct. 708, 716, held that *Batson* was retroactively applicable to all cases pending on direct review when the decision was announced. (See *People v. McDonald* (1988), 125 Ill. 2d 182, 188.) The court in *McDonald* reviewed a trial court's finding of purposeful discrimination which had been made after the Illinois Supreme Court, in response to *Batson* and *Griffith*, had ordered the trial court to make such a determination. 125 Ill. 2d at 188.

On appeal from that finding, the State claimed that the defendants had waived their *Batson* claim because the original *voir dire*

record failed to disclose the race of the veniremen. The record demonstrated only that the defendants had made timely objections to the striking of 16 black veniremen from the jury. The court held:

> "While we agree with the State that the record must disclose the race of the veniremen in order to provide for meaningful appellate review [citation], we disagree with the State insofar as it claims that the deficiencies in the original *voir dire* record in this case result in waiver of defendants' *Batson* claim. The precise purpose for which we remanded this case was to afford defendants an opportunity to substantiate their claim, in recognition of the *** *Batson* decision. Furthermore, defendants in this case requested leave of court to establish the race of the venire and the jury on the record at the conclusion of *voir dire* and before the jury was sworn. The State prevailed in its objection to defendants' attempts to substantiate their claim, and cannot now be heard to complain that the issue has been waived because of a deficient record." (125 Ill. 2d at 194-95.)

Even if the *McDonald* court based its holding only in part on the defendants' request for "leave of court to establish the race of the venire and the jury on the record" (125 Ill. 2d at 195), later cases have not held the failure to make such a request to constitute waiver of a *Batson* claim. In *People v. Andrews* (1989), 132 Ill. 2d 451, the defendant, whose case fell within the retroactivity rule announced in *Griffith*, had asked the trial court, following *voir dire*, to let the record reflect that the State had exercised all eight of its peremptory challenges against blacks, and that the jury had six black members. (132 Ill. 2d at 460.) On appeal, the court held that "[a]lthough if the record before us were completely devoid of any evidence to support defendant's *Batson* claim, defendant might have waived his right to a *Batson* hearing ***, the statements of defendant's trial counsel provide sufficient reason *** to remand this case for a *Batson* hearing." (132 Ill. 2d at 462-63.) The court additionally noted:

> "[A]ll the evidence defendant may eventually present may not be represented in the record before us; the trial judge may have kept notes written contemporaneously during *voir dire* [citation], or may recall certain information from his own observation of the venirepersons in this case; defendant may also wish to call his defense counsel along with some or all of the stricken venirepersons to testify at his hearing [citation]." 132 Ill. 2d at 463.

Following the decisions in *McDonald* and *Andrews*, the court in *People v. Lann* (1990), 194 Ill. App. 3d 623, held, regarding a defendant whose case fell within the retroactivity rule of *Griffith*, that "deficiencies in the *voir dire* record do not result in waiver of a *Batson* claim." (194 Ill. App. 3d at 633.) In *Lann*, there was no indication about the race either of the excluded jurors or of the members of the venire. Because *Mitchell's* holding of waiver has been impliedly overruled by these later cases, *res judicata* should not apply, and this portion of Maurice's petition should not have been dismissed as "frivolous or *** without merit." Accordingly, the trial court's judgment to that effect is reversed, and this cause is remanded for further proceedings consistent with the views expressed in this opinion. See *People v. Garrett* (1990), 139 Ill. 2d 189, 195; *People v. Suarez* (1991), 238 Ill. App. 3d 110, 125-26.

Affirmed in part; reversed in part and remanded.

HARTMAN and McCORMICK,* JJ., concur.

---

*Although Judge McCormick did not participate in the oral argument had in this case, he has read the briefs, audited the tape made at oral argument, and has otherwise participated in the decision-making process.