(No. 73326.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. KEITH COLEMAN, Appellant.

*Opinion filed July 22, 1993.*

HEIPLE, J., joined by BILANDIC, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellant.

Roland Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Randall Roberts and Lou Anne Corey, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, Keith Coleman, was tried by a jury in the circuit court of Cook County and convicted of murder and two counts of armed robbery. He was sentenced to concurrent terms of 35 years' imprisonment for murder and 15 years' imprisonment for armed robbery. The appellate court affirmed defendant's convictions and sentences. (223 Ill. App. 3d 975.) This court subsequently granted defendant's petition for leave to appeal (134 Ill. 2d R. 315).

Defendant raised several issues in the appellate court and attempted to present them again in his brief before this court. However, the State's motion to limit consideration of defendant's brief to the *Batson* issue was granted. (*Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) Therefore, the only issue for our review is whether the appellate court erred by refusing to remand the cause for a *Batson* hearing. We

present only the facts necessary for resolution of this issue.

Defendant and Nathan Haley were tried jointly. Haley is not a party to this appeal. Defendant and Haley were each allotted five peremptory challenges and the State was allotted a total of 10 peremptory challenges. After the State exercised four peremptory challenges to excuse venirepersons, codefendant Haley's counsel moved for a mistrial. The motion was based in part on what counsel described as "on a collision course of an all-white jury in this case." Haley's counsel went on to note for the record that it was "a black crime, which happened in the black community." He indicated that it would be proper "to send down and get some more jurors up here so my client can have a proper jury of his peers." Haley's counsel stated that it would be "patently unfair to try a black person before an all-white jury *** and it appears these prosecutors are not going to let any blacks sit on this jury."

Defendant's attorney joined in the motion for a mistrial. He asserted that the State had used at least one half of its peremptory challenges to exclude African-Americans or Hispanic-Americans from the jury. The court denied the motion for mistrial.

The State later exercised two peremptory challenges. It then used a seventh peremptory challenge to excuse an African-American, venireperson Maulden. Defendant's counsel objected, but the trial judge overruled the objection. However, the trial judge stated, "Mr. State's Attorney, I want [sic] you, if another black is called, and you excuse him or her, I am going to declare a mis-trial [sic]."

The assistant State's Attorney subsequently informed the court that he believed the jury had been tainted against the State by the judge's remark. He asked for a cautionary instruction, explaining that he excused

Maulden because Maulden said he had a tendency to favor the defense. The judge responded:

"THE COURT: But he said he would put that aside, and he was an intelligent man, and you can bet your bottom dollar he would have done that.

Mr. Victorson [Assistant State's Attorney]: Well, that may be, but we did not excuse him because he was black.

THE COURT: Well, I will accept that.

Mr. Victorson: But, it looked that way.

THE COURT: It might have, but I said what I said, and that is what you will have to live with."

Following the trial the jury rendered its verdicts. Haley's counsel noted that one of the jurors appeared to be upset, pointing out that "she was the only black juror on the jury." He asked that she be brought back and polled individually. The court denied the request.

In the appellate court defendant contended that the trial court erred in the jury-selection process by not conducting a hearing under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. The court determined that defendant waived any objection to the jury selection by failing to note the race of any of the excluded venirepersons for the record, except as to the juror whose race was identified. The court acknowledged that *Batson* applied retroactively to this case because the case was on direct appeal at the time *Batson* was decided. However, the appellate court concluded that defendant was still required to make an adequate record before a reviewing court would recognize a claim under either the *Swain* standard (*Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824) or the *Batson*-type standard that had been recognized in an opinion of that court, *People v. Payne* (1982), 106 Ill. App. 3d 1034, *rev'd* (1983), 99 Ill. 2d 135.

Based on the record presented by defendant, the appellate court concluded that neither the earlier *Swain*

standard nor the current *Batson* standard had been met. Further, with respect to Maulden, the only venireperson whose race had been identified, the court found that the trial court followed a procedure similar to what would be required under *Batson.* The trial court then accepted the State's representation that the peremptory challenge of Maulden was race neutral. The appellate court found it unnecessary to remand the cause as it related to this juror.

Defendant contends that the appellate court opinion is contrary to the law established in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, and a number of this court's opinions which subsequently followed *Batson, e.g., People v. Andrews* (1989), 132 Ill. 2d 451, and *People v. Hooper* (1987), 118 Ill. 2d 244. He correctly points out that while his case preceded the *Batson* decision, *Batson* applies retroactively to the case because it was on direct appeal at the time *Batson* was decided. (*Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708; *Hooper*, 118 Ill. 2d 244.) It is defendant's position that he cannot be denied an opportunity to establish a *prima facie* case of discriminatory peremptory strikes due to deficiencies in a pre-*Batson* record. He argues that the cause should be remanded for a *Batson* hearing wherein a proper record may be established from which to determine whether a *prima facie* case of discrimination exists.

In response the State contends that unlike the cases cited by defendant, the record herein shows there is no colorable claim of race discrimination to justify a *Batson* hearing. The State argues that its peremptory challenge of Maulden cannot be used to assist defendant in demonstrating a viable claim because the trial court accepted the State's race-neutral reason for excusing him. The State asserts that when defendant raised his first objection to jury selection by a motion for mistrial, the State

had exercised only 4 of its 10 peremptory challenges. The State points to defense counsel's statement that "at least one half" of the State's peremptory challenges were used "against any black or Latino juror." It infers from this remark that two of the four challenges were used to exclude an African-American and an Hispanic-American, asserting that defendant's claim rests solely upon one unidentifiable African-American venireperson. The State concedes that even if the statement can be interpreted to mean more than one African-American was excused, at least one of the peremptory challenges was directed at an Hispanic-American. At most then, the State contends that only three of the four challenges were used to excuse African-American venirepersons.

The State continues its argument by noting that if Maulden were included, the State exercised four of its seven peremptory challenges to exclude African-American venirepersons. This number was less than one-half of its 10 allotted peremptory challenges. The State claims that these numbers do not substantiate a colorable claim of race discrimination. It further dismisses the trial judge's cautionary remark regarding a possible mistrial and argues that defense counsel's remarks add nothing to the record. Therefore, the State claims that remand is not proper because there is no showing of a colorable claim of race discrimination.

The State's position is somewhat different from the position taken by the appellate court. The appellate court found that defendant waived any objection to jury selection by failing to preserve a record under either the *Swain* or *Batson* standards because defendant failed to note the race of excluded venirepersons, save one. The State essentially acknowledges that the record shows peremptory challenges were used to exclude African-Americans, but argues that since a sufficient number of African-Americans were not excluded, a colorable claim of

race discrimination is not supported by the record. In essence the State is asserting that defendant has failed to present a *prima facie* case based on a pre-*Batson* record merely on the basis of peremptory challenges used.

Simply because African-American venirepersons are peremptorily challenged does not, without more, raise the specter or inference of race discrimination. (*Batson*, 476 U.S. at 101, 90 L. Ed. 2d at 91, 106 S. Ct. at 1725; *People v. Evans* (1988), 125 Ill. 2d 50, 64.) As noted by Justice Ryan in his special concurrence in *People v. Hooper* (1987), 118 Ill. 2d 244, "We must avoid arbitrarily deciding the delicate question we now consider [racial discrimination in jury selection] solely from the number of blacks peremptorily excused as disclosed by the record." (*Hooper*, 118 Ill. 2d at 248 (Ryan, J., specially concurring, joined by Ward and Moran, JJ.).) However, we are also cognizant of the fact that should it be shown that even just one venireperson was excluded on account of race, such exclusion was unconstitutional and would require reversal of the conviction. *People v. Harris* (1989), 129 Ill. 2d 123, 175.

The State briefly mentions that defendant waived any objection to the jury-selection process by failing to note the race of any of the excluded venirepersons except one. While the record must disclose the race of the venirepersons in order to provide for meaningful appellate review, we disagree with the State insofar as it claims the deficiencies in the original *voir dire* record in this case result in waiver of defendant's *Batson*'s claim. (*People v. McDonald* (1988), 125 Ill. 2d 182, 195.) The precise purpose of a remand for a *Batson* hearing is to afford defendant an opportunity to substantiate his claim, in recognition of the substantially different evidentiary burden announced in the *Batson* decision. *McDonald*, 125 Ill. 2d at 195.

A defendant is required to establish a *prima facie* case of discrimination in order to prevail on his claim of unconstitutional discrimination in the exercise of peremptory challenges. (*Batson,* 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723; *People v. Edwards* (1991), 144 Ill. 2d 108, 151.) Under *Batson,* a defendant is required to show he was a member of a cognizable racial group and the prosecutor used peremptory challenges to remove venirepersons of that racial group. Second, a defendant is entitled to rely on the fact that peremptory challenges constitute a jury-selection practice that permits those to discriminate who are of a mind to discriminate. Lastly, a defendant is required to show that these facts and other relevant circumstances raise an inference of racial discrimination in jury selection. (*Edwards,* 144 Ill. 2d at 152.) If a *prima facie* case is established by a defendant, the burden shifts to the prosecution to come forward with race-neutral reasons for striking African-American venirepersons. (*People v. Mahaffey* (1989), 128 Ill. 2d 388, 412.) A trial court's determination that a defendant failed to establish a *prima facie* case will not be overturned unless it is against the manifest weight of the evidence. *Mahaffey,* 128 Ill. 2d at 413.

The relevant circumstances a trial court may consider when determining whether there was discrimination include: a "pattern" of strikes against African-American venirepersons; the prosecutor's questions and statements during *voir dire* examination and in exercising challenges; disproportionate use of peremptory challenges against African-Americans; level of African-American representation in the venire as compared to the jury; whether those excluded venirepersons were a heterogeneous group sharing race as their only common characteristic; race of the defendant and the victim; and race of the witnesses. (*Evans,* 125 Ill. 2d at 63-64.) These are important factors in determining whether a *prima facie*

case exists (*People v. Pecor* (1992), 153 Ill. 2d 109, 127) and cannot be determined on the basis of a pre-*Batson* record.

The United States Supreme Court recently issued its opinion in *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364. Therein the Court held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." (*Powers*, 499 U.S. at 402, 113 L. Ed. 2d at 419, 111 S. Ct. at 1366.) *Powers* is retroactive pursuant to the dictates of *Griffith v. Kentucky* (1987), 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661, 107 S. Ct. 708, 716. (*Pecor*, 153 Ill. 2d at 126.) Thus, defendants with claims still pending prior to *Powers* who made a legitimate and well-founded objection concerning the exclusion of jurors on account of race are now able to raise this issue much the same as defendants with claims pending prior to *Batson*. *Pecor*, 153 Ill. 2d at 126.

In light of the recent decision in *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364, a defendant need not show he is a member of "a cognizable racial group" in order to establish a *prima facie* case of discrimination. (*Edwards*, 144 Ill. 2d at 152.) However, he is still required to meet the other requirements set forth in *Batson*. (*Edwards*, 144 Ill. 2d at 152.) Accordingly, a defendant must demonstrate the "relevant circumstances" that raise an inference that the prosecutor peremptorily challenged venirepersons on account of their race. *Edwards*, 144 Ill. 2d at 153.

Following the *Batson* decision, this court remanded a group of cases on direct appeal to this court, to the circuit court to conduct *Batson* hearings. (See *Hooper*, 118 Ill. 2d 244; see also *Harris*, 129 Ill. 2d 123; *People v. Young* (1989), 128 Ill. 2d 1; *McDonald*, 125 Ill. 2d 182; *Evans*, 125 Ill. 2d 50.) As was noted by Justice Ryan in

his special concurrence in *Hooper*, 118 Ill. 2d at 245-46 (Ryan, J., specially concurring, joined by Ward and Moran, JJ.), it was considered unfair to a defendant if this court were to make a determination from a record made under *Swain* law as to whether a *prima facie* case was established under *Batson*. These defendants were given an opportunity to present evidence to the trial court regarding the discriminatory use of peremptory challenges under *Batson* law.

We conclude that the instant defendant should not be foreclosed by this record from the right to attempt to establish a *prima facie* case of discrimination at a hearing before a trial judge, based on the State's use of peremptory challenges at defendant's trial. The record is not completely devoid of any evidence to support defendant's *Batson* claim as the State contends. Based on defendant's trial counsel's statements at trial, we find sufficient reason to remand this cause for a *Batson* hearing. (*Andrews*, 132 Ill. 2d at 462.) We also find support for defendant's claim from codefendant's trial counsel's statements. It is proper to consider his remarks, as defendant and Haley were tried together before the same jury. And, just as a trial judge's notes or observations may be considered on remand at a *Batson* hearing (*Andrews*, 132 Ill. 2d at 463), we find the trial judge's cautionary remark to the prosecutor during *voir dire* provides evidence to support defendant's claim. While the State attempts to trivialize the judge's statement, its argument is unpersuasive. We also note that the record indicates that only one juror was African-American. The State's argument that this fact is not a certainty is hardly a reason to ignore a record reference which lends support to defendant's request for a *Batson* hearing. A *Batson* hearing will permit defendant an opportunity to establish whether only one African-American sat on the jury.

This case was tried before *Batson* was decided and falls under the implicit dictates of *Hooper*. (*Andrews*, 132 Ill. 2d at 463.) The State's attempts to distinguish cases cited by defendant (*Harris*, 132 Ill. 2d 366; *Evans*, 125 Ill. 2d 50; *McDonald*, 125 Ill. 2d 182; *People v. Allen* (1987), 168 Ill. App. 3d 397) fail to recognize that these cases were on review *after Batson* hearings were held wherein the defendants were afforded an opportunity to make a record from which the trial court could determine whether a *prima facie* case was established by defendant. The State would have this court make that determination in this case on a pre-*Batson* record and on the basis of the number of peremptory challenges used. Further, *People v. Andrews* (1989), 132 Ill. 2d 451, and *People v. Mitchell* (1991), 221 Ill. App. 3d 979, were remanded for *Batson* hearings because remarks by defense counsel were found sufficient to justify a remand, as we have found in the instant case.

The appellate court did find that the trial court conducted a procedure similar to that envisioned under *Batson* with respect to Maulden. The court found that a race-neutral explanation for Maulden's exclusion was accepted by the trial court. The flaw in this position is that the entire proceeding took place prior to *Batson*, and, thus, it is unclear whether the trial court seriously considered the State's explanation. (See *Pecor*, 153 Ill. 2d at 127.) Therefore, we do not find that a *Batson*-type hearing was conducted with respect to Maulden.

The appellate court also concluded that defendant failed to make a record as required under *Swain*, as well as case law from the appellate court which was subsequently reversed by this court. The State argues that defendant was on notice that he should preserve a record of his claim based on prior case law, including *Swain*.

We do not address the State's lengthy argument on this issue. *Batson* changed the requirements of what a defendant had to show to present a *prima facie* case of race discrimination from those required under *Swain*. At the time defendant was tried, he could not bring a claim because the law provided otherwise, despite any awareness of what was then expected to bring a claim. (See *Pecor*, 153 Ill. 2d at 124.) The purpose for applying *Batson* retroactively is to allow a person in defendant's position an opportunity to attempt to make a record to establish a *prima facie* case under *Batson* law. The State's argument flies in the face of the law set forth in *Batson*, *Griffith*, and this court's supervisory order in *Hooper* and subsequent case law.

Based on the foregoing, we reverse that part of the appellate court decision regarding the *Batson* issue and remand to the circuit court to allow defendant the opportunity to create a record and attempt to present evidence of a *prima facie* case under *Batson*. Should a *prima facie* case of discrimination be established by defendant, then the State will be required to go forward with race-neutral reasons for its peremptory challenges.

*Affirmed in part and*
*reversed in part;*
*cause remanded.*

JUSTICE HEIPLE, dissenting:

The majority opinion today sets forth an unfortunate precedent. In reversing and remanding this cause for a *Batson* hearing, the majority relied on marginal evidence which does not give rise to a colorable claim of racially discriminatory peremptory challenges. By doing so, the majority has at best created a guessing game for the appellate court, and at worst, mandated the remandment of all but the most ludicrous of claims for a *Batson* hearing.

The record in this case offers meager support for a colorable claim of racial discrimination. Indeed, the record makes clear that only one excused venireperson was identified as being black.

The record indicates that when defense counsel raised his first objection to the jury selection, the State had excused at most two, albeit unidentified, possibly black venirepersons. At that time, the State had exercised only four of its peremptory challenges, of which half were alleged to have been used "against any black or Latino juror." Arguably, this could mean that anywhere between zero to two black jurors were struck. The most plausible reading is that one black juror and one so-called Hispanic juror were excused. But, for purposes of determining whether a colorable claim exists, the most important fact for a court of review to keep in mind is that this record fails to indicate what in fact happened. Bald assertions, without more, should not give rise to a colorable claim of racial discrimination.

As to the only prospective juror excused who was identified as being black, there was no evidence that the peremptory challenge was for anything but a race-neutral reason. The prosecutor explained that he excused Maulden because Maulden said he had a tendency to favor the defense. The mere fact that the trial court may have had a difference of opinion with the prosecutor as to Maulden's ability to put aside this tendency is insufficient foundation to build a claim of racial discrimination.

I submit that the facts built into this record do not present a colorable claim of discrimination sufficient to require a *Batson* hearing. If the facts in this case are deemed sufficient, numerous other cases with equally unsubstantiated records would similarly require remands for *Batson* hearings. Indeed, today's opinion would seem to require a *Batson* hearing any time an attorney cried

foul, regardless of whether the race of the jurors or prospective jurors were recorded.

I also take issue with today's opinion for another reason. Assuming for the sake of argument that the facts contained in this record were enough to establish a colorable claim, the majority has failed to articulate what pushed this case over the line. Was it the totality of the evidence in the record or were the judge's remarks to the prosecutor during *voir dire* the deciding factor? By failing to shape and define the amorphous facts of this case, the majority has essentially left the reviewing courts of this State without guidance.

Accordingly, I respectfully dissent.

JUSTICE BILANDIC joins in this dissent.