(No. 72028.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GREGORY PECOR, Appellee.

*Opinion filed November 19, 1992.*

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Michele I. Lavin, Theodore F. Burtzos,

Veronica X. Calderon and Randall Roberts, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone and Rita A. Fry, Public Defenders, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant, Gregory Pecor, was convicted of murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)), residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3), and armed robbery. (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a).) The same jury which convicted defendant found defendant eligible for the death penalty, but could not unanimously agree that there were no mitigating factors sufficient to preclude imposition of the death penalty. (See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(g).) The trial court sentenced defendant to life imprisonment without parole on the murder conviction, 30 years' imprisonment for armed robbery, and 15 years' imprisonment for residential burglary. Defendant appealed, and the appellate court reversed and remanded for a hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. The State appealed to this court (134 Ill. 2d R. 315), and we allowed the State's appeal to determine whether defendant's cause should be remanded for a *Batson* hearing.

During jury selection, the State peremptorily challenged one white venireperson, and then apparently used its next four peremptory challenges to remove black prospective jurors from the jury. At this point, the following colloquy ensued:

"[Defense counsel]: Your Honor, in the exclusions the State has just made, they have executed five of the chal-

lenges. The first challenge was a white gentleman who had been in the penitentiary. The last four challenges have been black jurors. We believe that it's been shown at this point by the State the pattern of racial exclusions of the four black jurors, and they have not challenged other jurors who have the same basic backgrounds and characteristics and race in this matter. Pursuant to People versus Bateson [*sic*], I believe by these four challenges, there's been a prima facie showing at this point based on the characteristics of the last four challenges as compared to those who have not been challenged, that the only difference here has been a racial difference. The four blacks have been challenged in this matter in sequence have been Joyce Joshawa, a 49 year old male black—

THE COURT: Are you certain of that? Are you certain of that?

[Defense counsel]: By viewing him.

THE COURT: I put him down as white. Do you know something that I don't?

[Defense counsel]: He was a male black. He was the gentleman who was confused.

THE COURT: Carlos Lavington, Chuck Edmonds, and Alberta Collins.

[Defense counsel]: All four were black and all four were challenged by the State, and I believe there's been nothing in their background that would differentiate them other than racial characteristic.

[Assistant State's Attorney]: Your Honor, may I just respond without—Your Honor, if I would just point out for the record—

THE COURT: Well, wait a minute.

[Assistant State's Attorney]: I don't believe they have made a prima facie case; however, we have excused four out of five that would appear to be black on its face. If the Court has no objection, I would like to address the reasons why.

THE COURT: Please do, but let's keep in mind at least from the Court's outward appearance, the defendant is a male Caucasian, is that accurate?

[Defense counsel]: Yes.

THE COURT: Is the victim allegedly a Caucasian?

[Defense counsel]: That's correct.

THE COURT: Go ahead.

[Assistant State's Attorney]: Your Honor, I would point out there is no race identification with the defendant. It's a white on white crime. I don't believe that Bateson [sic] applies, and I would ask the individuals, the record reflects, we have only excused one white juror, four blacks. The white juror, the only juror that's identifiable with the defendant. Therefore, I do not believe there is a race issue here.

THE COURT: Well, the Court, first of all, has serious, serious questions whether Bateson [sic] applies at all since the subsequent decisions have come down have in similar cases have ever refused to say Bateson [sic] applies. Here I have a Caucasian defendant, and an alleged victim who was Caucasian, and I have the State having exercised four challenges of black individuals, and there is nothing in the world that this Court in this case, if Bateson [sic] applies, which I seriously question that even smacks remotely the [sic] exclusion of those individuals for racial reasons in this case, and accordingly I find that the defense has failed to make a prima facie case under Bateson [sic]."

The next day, before jury selection continued, the court announced the following:

"I would further like to place of record that yesterday in ruling on a Batteson [sic] motion filed by the defense, I made note of the fact that the Supreme Court of Illinois had decided cases subsequent to Batteson V Kentucky [sic] and holding that a Batteson [sic] motion does not apply where there is a caucasian defendant. The name of the case escaped me. I'll now cite it. People versus Holland, H-o-l-l-a-n-d, cited by the Illinois Supreme Court, Docket 64182, December 21, '87, holding that in fact a caucasian defendant has no standing to assert a Batteson [sic] violation where the defense claims that the State exercises peremptory challenge [sic] to exclude black prospective jurors."

Defense counsel did not renew any *Batson* claim, nor did counsel make a record of the racial composition of the venire, the race of any persons subsequently excluded from the venire, or the racial composition of the petit jury. Defense counsel did, however, include in his post-trial motion the argument that the trial court "improperly denied *** [defendant's motion] for a mistrial based upon the prosecution using their peremptory challenges to exclude black people from serving on [defendant's] jury."

Defendant appealed to the appellate court. After defendant filed his brief with the appellate court, the State filed its initial appellee brief, which, according to defendant's supreme court brief, failed to include the argument that defendant's *Batson* claim had been waived because defendant failed to adequately preserve the record for review. Defendant's brief also asserts that the State later included this argument in a supplemental brief filed four days before oral argument. After oral argument, defendant replied to the State's supplemental brief in a letter to the appellate court.

Shortly after oral arguments to the appellate court in this case, the United States Supreme Court issued its opinion in *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364. The *Powers* decision held that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded jurors share the same race." (*Powers*, 499 U.S. at 402, 113 L. Ed. 2d at 419, 111 S. Ct. at 1365.) The appellate court, relying on *Powers*, reversed and remanded for a *Batson* hearing.

I

On appeal to this court, the State argues that defend-

ant should not be given a second chance to prove his *Batson* claim because defendant failed to preserve the record for review, such a remand would be impractical, and because the trial court correctly found that defendant had not established a *prima facie* case under *Batson*. Defendant cross-appeals and argues that the appellate court should have remanded for a new trial, not simply a *Batson* hearing. We affirm the appellate court's decision.

The State first argues that defendant failed to fully preserve the record for review. Defendant, however, argues that the State has waived this claim for review by failing to present it at all to the trial court, and to the appellate court in its initial brief. Defendant first argues that issues not raised in the trial court are considered waived upon appeal, and that the principle of waiver applies equally to the State as to defendant in a criminal trial (*People v. O'Neal* (1984), 104 Ill. 2d 399, 407), even when the State has prevailed in the trial court (*People v. Adams* (1989), 131 Ill. 2d 387, 395-96). Defendant further notes that a specific objection in the trial court waives all other grounds not specified. (*O'Neal*, 104 Ill. 2d at 407.) Defendant then argues that at trial and at the hearing on the motion for a new trial, the State's only specific objection to the *Batson* motion was that defendant had no standing.

As the State notes, however, this court has held in similar circumstances that "[t]he State would have absolutely no reason to object to the lack of a record when defendant moved for a mistrial or at any post-trial proceedings where the trial judge presiding over the trial, who has seen the venire-persons and jury with his own eyes, is ruling on the *Batson* issue." (*People v. Andrews* (1989), 132 Ill. 2d 451, 459.) In such a situation, the State may preserve the issue by arguing the issue on appeal to the appellate court. (*Andrews*, 132 Ill. 2d at 459.) Defendant's claim here must fail.

Defendant also argues, however, that the State has waived this issue because it failed to include the issue in its initial brief to the appellate court. According to defendant's brief, the State first raised the issue in its supplemental brief to the appellate court. (The State argues in its brief, with no support in the record, that defendant allowed the State to file the supplemental brief.) Defendant points out that supreme court rules provide that "[p]oints not argued [in the opening brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." (134 Ill. 2d R. 341(e)(7).) Defendant also notes that an appellee's brief must conform to this same requirement. (134 Ill. 2d R. 341(f).) Defendant finally notes that the rules do not provide for supplemental briefs, other than as supplements to petitions for leave to appeal which have been let stand as main briefs. 134 Ill. 2d R. 341(h).

We note, however, that nothing in the record itself supports defendant's claim. Although both sides make unsupported arguments as to what occurred, and defendant has included sections of what appear to be the State's appellate briefs and defendant's letter written to the appellate court in the appendix of its brief, this material was never made part of the record. This court has previously stated that "[w]here the record is insufficient or does not demonstrate the alleged error, the reviewing court must refrain from supposition and decide accordingly." (*People v. Edwards* (1978), 74 Ill. 2d 1, 7.) Defendant has failed to supplement the record to support his argument, and we thus cannot consider it. We therefore find that the issue has not been waived by the State.

However, even if defendant were able to show that the State had waived this issue, we have previously noted that Rule 341(e)(7) "states an admonition to the parties, not a limitation upon the jurisdiction of the reviewing court."

(*Hux v. Raben* (1967), 38 Ill. 2d 223, 224.) Moreover, the "responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversarial nature of our system." (*American Federation of State, County & Municipal Employees, Council 31 v. County of Cook* (1991), 145 Ill. 2d 475, 480, citing *Hux*, 38 Ill. 2d at 224-25.) Thus, we would nevertheless have chosen to address the State's arguments.

We now address the State's claim that defendant has waived this issue for review by failing to adequately preserve the record. In arguing this, the State attacks the appellate court's decision that while "the record does not reflect the racial composition of the venire, the race of any persons subsequently excluded from the venire, or the racial composition of the petit jury and that these facts may be relevant to the establishment of a *prima facie* case by the defendant, *** neither the trial judge, the prosecutor, nor the defendant could have predicted the new procedure mandated by the United States Supreme Court in *Powers*." (213 Ill. App. 3d 472, 475.) The State argues that defendant should have known what his burden was to preserve the claim for review because it was delineated in *Batson* and has been specified by this court:

> "[A] defendant was required to 'first show that he was a member of a cognizable racial group' and that the prosecutor exercised peremptory challenges to remove from the venire members of that racial group. Second, the defendant was entitled to rely on the fact that peremptory challenges constitute a jury-selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant was required to show that these facts and ' "any other relevant circumstances" ' raise an inference that the prosecutor peremptorily challenged venire members on account of their

race." (*People v. Edwards* (1991), 144 Ill. 2d 108, 151-52, quoting *People v. Evans* (1988), 125 Ill. 2d 50, 63.)

The State further notes that defendant should have known the importance of the following factors which a trial court considers in determining whether a *prima facie* case of discrimination has been established under *Batson*:

> "a 'pattern' of strikes against black jurors; 'the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges' [citation]; the disproportionate use of peremptory challenges against blacks [citations]; the level of black representation in the venire as compared to the jury [citations]; whether the excluded blacks were a heterogeneous group sharing race as their only common characteristic [citation]; *** and the race of the witnesses [citation]." *People v. Evans* (1988), 125 Ill. 2d 50, 63-64.

The State argues that case law always required a defendant to make a record of his claims (*People v. McDonald* (1988), 125 Ill. 2d 182, 194-95) and that a defendant has the burden to preserve the record for any claim he chooses to raise (see *People v. Smith* (1985), 106 Ill. 2d 327, 334-35). The State further argues that the failure to make a record of the facts of an objection waives that claim for review (*People v. Smith* (1969), 42 Ill. 2d 479, 483). The State then notes that "[w]here the record is insufficient or does not demonstrate the alleged error, the reviewing court must refrain from supposition and decide accordingly." (*Edwards*, 74 Ill. 2d at 7.) Finally, the State argues that an incomplete record will result in the resolution of any doubt in the record against the appellant. (*People ex rel. Spicer v. Coleman* (1979), 72 Ill. App. 3d 631, 637.) The State concludes that defendant should have been aware of the record requirements he needed to meet under *Batson*, but simply failed to meet them. The State also believes the change

effected in *Powers* should not excuse defendant from making a full record because *"Powers* merely accorded defendant standing to raise an already existing claim."

The State notes that the following have not been preserved in the record for review: (1) what facts, in defendant's view, made the four black members of the venire challenged by the State a heterogeneous group; (2) whether four of the State's five peremptory challenges were indeed used to strike black persons, as there was some debate over whether one of the challenged members of the venire was black or white; (3) the racial composition of even any part of the venire, the seated jurors, or the balance of those persons excused either for cause or by peremptory challenge (by either defendant or the prosecutor); and (4) most importantly, the *Batson* requirement of showing "facts and any other relevant circumstances [which] raise [the] inference" of purposeful racial discrimination by the prosecutor. *Batson,* 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.

As defendant notes, however, the issue presented here is not the same as in pre-*Batson* cases cited by the State which hold that the failure to preserve the record waives an issue for review. (The one case cited by the State which is applicable here, *McDonald,* does not support the State's position, as shown below.) The difference here is that when defendant attempted to raise his claim, he asserted it before *Powers* was decided and when *People v. Holland* (1987), 121 Ill. 2d 136, controlled. In *Holland,* this court noted that *Batson* required a defendant "challenging the exclusion of prospective jurors because of their race [to] show 'that members of *his race* have been impermissibly excluded.' (Emphasis added.) (476 U.S. 79, 93, 90 L. Ed. 2d 69, 85-86, 106 S. Ct. 1712, 1721.)" (*Holland,* 121 Ill. 2d at 157.) The *Holland* court concluded that since the defendant was white, and was challenging the exclusion of black

prospective jurors, the defendant could not "establish the threshold element of a *prima facie Batson* violation." (*Holland,* 121 Ill. 2d at 157.) This court thus declined to address the defendant's *Batson* claim. In the instant case, defendant thus had no standing to assert the claim, as he could not establish the threshold of a *prima facie Batson* violation. The trial court, citing *Holland,* specifically told defendant he had no standing to raise the issue, and defendant was thus effectively precluded from raising the issue again or making a complete record.

We further note that this court has rejected similar claims by the State in cases tried prior to *Batson* where defendants had raised equal protection arguments concerning the State's use of peremptory challenges on account of race, but had failed to adequately preserve records for review. (See *People v. Andrews* (1989), 132 Ill. 2d 451; *People v. McDonald* (1988), 125 Ill. 2d 182.) In both of these cases, the State argued, as it does here, that defendants had waived *Batson* claims for failing to preserve an adequate record for review. This court stated in *Andrews*:

> "In [*McDonald*], although the court similarly noted that 'the record must disclose the race of the veniremen in order to provide for meaningful appellate review' (125 Ill. 2d at 194-95), the court went on to state that 'we disagree with the State insofar as it claims that the deficiencies in the *original voir dire* record in this case result in waiver of defendants' *Batson* claim,' not only because the defendants were prevented by the State's objection from making a record in the trial court, but also because the trial and *voir dire* had occurred before *Batson* was decided. (Emphasis added.) (125 Ill. 2d at 195.) The court stated that the 'precise purpose for which we remanded this case was to afford defendants an opportunity to substantiate their claim, in recognition of the substantially

different evidentiary burden announced in [*Batson*].' 125 Ill. 2d at 195." (*Andrews*, 132 Ill. 2d at 460.)

We find the same to be true here.

The State argues, however, that defendant was not prevented by the court and prosecutor from establishing his *prima facie* case. The State argues that defendant was free to make his record, even if only for the sake of preserving a record, as is done when claims are denied. The State concludes that because defendant was given a full opportunity to make a *prima facie* case and preserve the record when *Batson* was already decided, he should not be able to go back and be given a second chance merely because he now has standing to do so.

In arguing this, the State fails to understand the importance of standing. According to the State, defendant should have ignored the fact that the trial court correctly informed him that under *Holland*, he had no standing to raise the issue, and should have continued to raise the claim and make a complete record, if only to preserve the issue. This was not, however, an instance where the court weighed facts and then, using its discretion, decided accordingly. This was an instance where the law was clear: defendant could not raise the *Batson* claim because he had no standing to do so. Any attempt to make a record here, or persist in his claim where the law was clearly to the contrary, would have been, at the time, a waste of judicial resources. We do not believe a defendant should have to anticipate an eventual change in the law in order to preserve an issue for review. Such a rule would require defendants to burden the courts with requests to make records of assertions where the law provided specifically that they had no such claim. Such a process would overly burden the courts, resulting in substantial delay and injustice.

The State makes several other similar arguments which also ignore or trivialize the fact that defendant did

not have standing at that time to raise a *Batson* issue in this case. First, the State argues that because defendant raised the claim, "the changes in *Powers* were met" and that "defendant merely failed to comply with the requirements that were the same in both *Batson* and *Powers*." Here, however, the State confuses standing with the fact that defendant attempted to raise an argument in court. Simply because a defendant attempts to raise an issue does not mean that he then has standing to address the issue. If the State's argument were correct, it would mean that defendant reversed *Batson* and *Holland,* as far as their requirement that defendants share the same race as the challenged members of the venire, by simply attempting to raise the *Batson* issue. This did not happen here. Thus, contrary to the State's assertion, defendant did not meet the change effected by *Powers*.

The State also argues that defendant should not be equated with a defendant who had asserted his equal protection claim prior to *Batson* and under *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. Defendants whose cases were not yet final when *Batson* was decided, but who had raised equal protection claims concerning the exclusion of jurors on account of race, were given an opportunity to go back to the trial court to create a record and present their claim to the trial court in order to establish a *Batson* violation. (See *People v. Hooper* (1987), 118 Ill. 2d 244.) The State believes that the change in law from *Swain* to *Batson* was dramatic, while the change from *Batson* to *Powers* is much less significant and poses no fairness concerns.

In *Swain,* the Supreme Court held that for a defendant to prevail on an equal protection claim of racial discrimination in the selection of the jury, the defendant had to show "the prosecutor's systematic use of peremptory challenges against Negroes over a period of time."

(*Swain v. Alabama* (1965), 380 U.S. at 227, 13 L. Ed. 2d at 776, 85 S. Ct. at 839.) Under *Swain*, then, a defendant could not prove his case by relying solely on the facts of his own case. *Batson* changed the burden of proving the State's racial discrimination by allowing a defendant to rely solely on the facts of his case. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) However, under *Batson*, a defendant could only object to the removal of jurors who were of the same race as the defendant. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) As noted previously, *Powers* changed this requirement, as it for the first time allowed a defendant to object to the removal of jurors on racial grounds who were not of the same race. *Powers*, 499 U.S. at 402, 113 L. Ed. 2d at 419, 111 S. Ct. at 1366.

While the State acknowledges it was unfair for a defendant who raised a claim under *Swain*, but prior to *Batson*, to try and present his case with a record made under *Swain*, it argues that the same fairness concerns are not present in the case at bar. Again, the State argues that the standing requirement is insignificant: "it is *only* a question of standing." (Emphasis added.) The State also argues that the difference between a defendant who objected to the exclusion of jurors under *Swain*, but before *Batson*, and defendant here is that the defendant prior to *Batson* was unaware of what would be required to present a case consisting of only the facts of his individual case. The State then argues that defendant in the instant case did know the record requirements and thus should have made a complete record. The State relies on *People v. Edwards* (1991), 144 Ill. 2d 108, where this court held that while a defendant under *Powers* now does not have to show that he is a member of a cognizable racial group, he "must otherwise still show the other requirements established in *Batson*." (*Edwards*, 144 Ill. 2d at 152.) The State thus argues that

defendant should have known what requirements he needed to preserve the record because they are the same as in *Batson*, except for the requirement that the defendant be of the same race as the challenged jurors.

We first note that a defendant raising a claim under *Swain* but prior to *Batson* was not completely unaware of what would be required to present a *prima facie* case concerning the State's challenge of jurors in his own case. As the Supreme Court noted in *Batson*:

> "The standards for assessing a prima facie case in the context of discriminatory selection of the venire have been fully articulated since *Swain*. See *Castaneda v. Partida, supra*, at 494-495; *Washington v. Davis*, 426 U.S. at 241-242; *Alexander v. Louisiana, supra*, at 629-631." (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.)

Thus, those defendants who had their causes remanded to create a record and present their *Batson* claim who brought their claims after *Swain* but prior to *Batson* were not totally unaware of what was expected to bring their claims. However, these defendants could not bring such claims because the law provided otherwise. Here, while defendant knew what *Batson* required, he could not have predicted what the Supreme Court decided in *Powers*, but did know that he could not raise the claim because the law prevented him from doing so. Further, while the State is correct in stating this court's holding in *Edwards*, the State still trivializes the issue of standing, which, as we have noted, is not insignificant. Thus, while defendant was aware of the requirements of *Batson*, he was also aware and instructed by the trial court that under *Batson* and *Holland*, he could not raise the claim, which effectively precluded defendant from preserving the record for review.

The State similarly argues that defendant's failure to preserve a full record cannot be excused because this issue is not novel. The State believes that the claim was not novel because the law was available to defendant at trial and on his appeal to the appellate court, and yet defendant did not provide the court with a complete record. The State argues that the fact that defendant raised the issue at trial shows that the issue is not so novel as to have prevented him from making a complete record. Again, the State ignores the fact that defendant had no standing under *Batson* and *Holland* to raise this issue. Because defendant had no standing to raise the issue, the law was not available to him.

The State next argues that it would be impractical to allow white defendants to now go back and make a new record. The State argues that such action would allow anyone who is not black, and who did not even raise this claim at trial, to attempt to go back and attempt to prove a *prima facie* case. However, in *People v. Evans* (1988), 125 Ill. 2d 50, this court found that a defendant had waived the right to contest the State's peremptory challenge of a black juror by failing to object to that juror's challenge, even though the case was tried before *Batson* had been decided. In concluding this, the court noted that *"Batson* requires that the defendant make a timely objection to the prosecutor's peremptory challenge. (*Batson*, 476 U.S. at 99, 90 L. Ed. 2d at 89-90, 106 S. Ct. at 1724.)" (*Evans*, 125 Ill. 2d at 61.) We note that *Powers* requires that a defendant raise a "legitimate and well-founded objection[ ]." (*Powers*, 499 U.S. at 416, 113 L. Ed. 2d at 429, 111 S. Ct. at 1374.) We find that defendant's objection to the prosecution's use of four out of its first five peremptory challenges to exclude black prospective jurors raised a legitimate and well-founded objection. How-

ever, defendants who made no objection whatsoever cannot now simply create claims and go back to the trial court and attempt to prove a *prima facie* case of discrimination. Defendant here even acknowledges that he is only challenging the four jurors to whom he made objection in court.

The State also believes that such a decision would result in an influx of litigation on the issue, because all defendants who raised *Batson* claims and whose cases were not final when *Powers* was decided will now attempt to go back to the trial court a second time to build a record on this claim based on the number of any cognizable racial group that may have been excluded from his jury. We note again that a defendant is limited by his initial objections at the trial court. However, we also note that *Powers* is retroactive pursuant to the dictates of *Griffith v. Kentucky* (1987), 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661, 107 S. Ct. 708, 716. Thus, defendants with claims still pending prior to *Powers'* being decided, who made a legitimate and well-founded objection concerning the exclusion of jurors on account of race, will now be able to raise this issue, much the same as defendants with claims pending prior to the decision in *Batson* were afforded the right to properly raise their claims. We also note, however, that in some cases, a complete record may be available, as was the case in *Edwards*. In such instances, where the defendant was not precluded from making a record and the record reveals that the trial court made a proper determination of the *Batson* issue, the defendant will not be allowed another chance to prove a *prima facie* case.

The State next argues that the fact situation in this case is not the same as that in *Powers*. The State argues here that while the *Powers* Court remanded the cause for further proceedings not inconsistent with its

opinion, the State of Ohio in *Powers* conceded that if the Court found that a white defendant had standing to raise a *Batson* claim the cause should be remanded. The State makes no such concession here. The State also argues that the defendant in *Powers* may have been precluded from making a record, but the same is not true here. These arguments must fail, as we have already found that this court's decision in *Holland* and the fact that the trial court informed defendant he had no standing effectively precluded defendant from making a record here. Moreover, our own cases dealing with defendants who raised claims prior to *Batson*, but who failed to preserve a complete record for review, are applicable here.

The State's final argument is that the trial court nevertheless found that defendant had failed to make a *prima facie* case under *Batson*. The State believes that the trial court's statement that defendant had no standing pursuant to *Holland* did not affect its finding that defendant failed to make a *prima facie* case.

However, the flaw in the State's argument is that the entire proceeding took place prior to *Powers*, and under *Holland*, and the trial court informed defendant and proceeded as though defendant had no standing to raise the issue. It is thus unclear how seriously the trial court took defendant's claim. We also note that because the objection was made before jury selection was completed, the trial court made its ruling without the benefit of the racial composition of the entire venire, the seated jurors, or the balance of those persons excused either for cause or by peremptory challenge. As the State noted above, these are important factors in determining whether a *prima facie* case exists, and thus need to be considered on remand. See *Evans*, 125 Ill. 2d at 63-64; see also *Hooper*, 118 Ill. 2d at 245 (Ryan, J., concurring).

## II

We now address defendant's cross-claim that he is entitled to a new trial, not just a remand for a *Batson* hearing. Defendant first argues that he is entitled to a new trial because the prosecutor admitted that he challenged the four black members of the venire for racial reasons. We do not agree.

Defendant argues that where the prosecutor "defend[s] his use of peremptory strikes without any prompting or inquiry from the trial court," and the trial court "has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." (*Hernandez v. New York* (1991), 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866.) Defendant believes that the prosecutor gave his reasons for peremptorily challenging the four black members of the venire and that the question of whether defendant established a *prima facie* case is thus moot. Defendant then argues that the prosecutor admitted he challenged the jurors because they were black and because *Batson* did not apply.

We find, however, that the prosecutor did not give specific reasons for challenging the four black members of the venire and did not admit to challenging them because of their race. Under *Batson* and *Holland*, defendant had no standing to assert the claim, and the prosecutor thus had no obligation to offer any reasons. Here, the prosecutor told the court that he would give his reasons, but the trial court informed him to keep in mind that this was a white defendant and a white victim. The prosecutor then stated that he had only excused one white juror, who would be identifiable with defendant, a requirement under *Batson* at that time, and four black jurors. Thus, the prosecutor concluded

that under *Batson*, there had been only one person excused who could form the basis for a challenge, the white juror, and the prosecutor argued that the excusal of the white juror presented no race issue. The prosecutor never offered his reasons for challenging the four black jurors.

In arguing this, defendant wishes to escape the record requirements of *Batson* due to the fact that his case was tried before *Powers* had been decided, but also wishes to hold the State to the requirements of *Powers* even though the trial took place before *Powers*. While defendant focuses on the black jurors, the State focused on the white juror excused, which is all he was required to do at that time.

Defendant also argues that notwithstanding the fact that the record is incomplete, it is apparent that he established a *prima facie* case of discrimination. However, as we noted above, the determination of whether a *prima facie* case has been met involves important circumstances, several of which are not contained in the record. As with cases tried pre-*Batson* which were sent back for a trial court's determination, we do the same here.

For the foregoing reasons, the decision of the appellate court is affirmed. The cause will thus be remanded, pursuant to the appellate court's mandate, to allow defendant the opportunity to create a record and present to the trial court evidence of a *prima facie* case under *Batson*.

*Affirmed.*