(No. 71320.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. HOWARD WILEY, Appellant.

*Opinion filed October 21, 1993.*

466

MILLER, C.J., dissenting.

Charles M. Schiedel, Deputy Defender, and Allen H. Andrews, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and Barbara Jones, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Howard Wiley, was convicted of three counts of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(3)) and three counts of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)). The trial court determined that defendant was eligible for the death penalty on the ground that he had committed the murders during the course of the armed robberies. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6).) After the trial court further determined that there were no mitigating factors sufficient to preclude imposition of a death sentence, the court ordered that the defendant be sentenced to death for the murder convictions. The court also imposed consecutive, 30-year sentences for defendant's armed robbery convictions. Defendant's death sentence has been stayed (134 Ill. 2d R. 609(a)) pending direct appeal to this court (Ill. Const. 1970, art. VI,

§4(b); 134 Ill. 2d R. 603). Because we find defendant is entitled to further proceedings to determine whether the State's use of peremptory challenges violated *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, we remand the matter for further *Batson* proceedings and retain jurisdiction of the cause. In light of this disposition, we limit our statement of the pertinent facts to those necessary to our decision.

## BACKGROUND

Defendant was tried before a jury and found guilty of the murder and armed robbery of Donna Rucks (Rucks), her daughter Carla Williams (Williams), who lived with her in an apartment on the south side of the City of Chicago, and Rucks' sister, Adrienne Parham (Parham). The State's evidence indicated that the offenses occurred in Rucks' apartment on approximately December 2, 1986; State evidence further established that each of the women died from gunshot wounds to the head. State evidence indicated that defendant made incriminating statements to police authorities regarding his involvement in the murders. In addition, the prosecution evidence linked defendant to the murder weapon.

At the close of the State's case, the trial court denied defendant's motion for a directed verdict. Defendant presented no evidence in his own behalf. Following deliberations, the jury found defendant guilty of three counts of murder and three counts of armed robbery. After sentencing hearings, defendant was sentenced to death on the murder convictions and consecutive 30-year sentences for the armed robbery convictions.

## *BATSON* ARGUMENT

Defendant argues that the trial court erred when it denied his motion for a mistrial based on the State's

alleged discriminatory use of peremptory challenges during jury selection. The record reveals that at the close of *voir dire*, defendant made a motion for a mistrial on the ground that the State had improperly used peremptory challenges to exclude African-American prospective jurors. Defendant claimed that the State's use of its peremptories violated *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. The State urges on appeal that the defendant waived this *Batson* argument because he did not raise it until the close of *voir dire*. (See *People v. Evans* (1988), 125 Ill. 2d 50, 61-62.) However, the record shows that, in response to the defendant's objection at the close of *voir dire*, the State responded to the merits of the defendant's *Batson* challenge but did not object to the timeliness of the defendant's claim. By failing to object to the timeliness of the defendant's *Batson* argument, the State has waived its assertion that defendant's *Batson* claim was untimely. (See *People v. Andrews* (1989), 132 Ill. 2d 451, 458.) In light of these circumstances, we address the merits of defendant's *Batson* argument in this appeal.

## Trial Court *Batson* Proceedings

In his motion for a mistrial, defense counsel asserted that the prosecution had exercised six peremptory challenges to remove African-American prospective jurors. The defense represented that there was nothing, other than race, to distinguish the venire members whom the State had excused from any of the venire members whom the State had accepted. On this basis, defense claimed that the State's use of peremptory challenges violated *Batson*.

The State responded that of its 11 peremptory challenges, five were exercised with respect to individuals who were African-American and six were used to

strike prospective jurors who were Caucasian. The State claimed that it had not engaged in a "systematic exclusion" of African-Americans from the jury and asserted that defendant had to prove the State had engaged in such a "systematic exclusion." The State also noted that the defense excluded more African-Americans than did the prosecution.

The trial court invited counsel for both defendant and the State to give reasons for their use of peremptory challenges. The defendant responded that he did not believe his own exercise of peremptory challenges was pertinent to the question of whether the State had violated *Batson*. Defendant also argued that the prosecution "misstate[d] the standard" that should be applied and that the *"Batson* decision *** goes to the exclusion of blacks because of their race, it does not matter how many are excluded in terms of the number of peremptory challenges used by the State ***." In response to the trial court's inquiry, the State noted for the record the names of the African-American venire members who had been excused by the defense. The prosecutor also offered reasons for his use of a peremptory challenge to excuse one African-American venireman, Eugene Weatherall. The prosecutor did not explain his use of peremptories against any of the other African-American venirepersons excused by the State.

The trial court denied defendant's *Batson* motion. The court noted that the defense had excused six African-Americans tendered by the prosecution, that the prosecution had excused five African-Americans, and that the defense had excused more African-American venire members than the State. The trial court also noted that at least three African-American jurors were seated on the panel.

In so ruling, the trial judge observed that in the past, it had declared mistrials where it had been "shown that the State ha[d] improperly excused blacks in a systematic manner." The trial judge stated that in the present case, the State had not "exclude[d] blacks in any systematic manner," adding that he himself "might *** have done exactly the same thing" with respect to the prospective jurors whom the State had peremptorily challenged. The judge further noted that "the State had excused more whites than they did blacks, and you [the defense] excused more blacks than they did, and there are blacks sitting on the jury."

Based upon these considerations, the trial court concluded that there had been "no showing of any systematic exclusion, period" and denied defendant's motion for a mistrial. The court added the following observation:

> "[T]he fact that the *Batson* case came down doesn't mean that the motion has to be made in every case. I think since it does raise an issue as to the appropriateness of the conduct of the State and it calls into question the integrity of the State's Attorneys ***, that it is something that should not be taken as a motion of course.
>
> This court has noted all too often that it is made as a motion of course, and I think that is inappropriate."

Additional pertinent information as it appears from the statements of the trial court and counsel during *voir dire* is summarized as follows. During jury selection at defendant's trial, a total of 42 persons were interviewed (excluding persons whom the trial court excused for cause). Of these 42 persons, 14 were African-American (36% of the prospective jurors). With respect to these 14 African-Americans in the prospective jury pool, the State exercised 5 of its 11 peremptory challenges (45% of its peremptory challenges), and

three were chosen to serve as members of the jury (21% of total jury, including alternates).

The defendant challenges the State's use of its peremptories to excuse five African-American prospective jurors. With respect to the characteristics of the prospective jurors who were excluded by the State, their testimony revealed the following.

*Willie Smith* stated that he had lived in the Austin neighborhood for the last 10 years and that he had worked for Parker Car Division for 11 years. Smith stated that his wife was a "floor lady" for Dentra Fair Company. Smith said that he rented his home and had two children, ages 27 and 25. Smith had never previously served on a jury.

*Lawrence Towns* advised the court that he had lived in the Roseland community for the last 19 years and that he worked for Sears. Towns stated that his wife worked as a supervisor and that he owned his home. He said that he had served on a robbery jury two years earlier, but that this would not affect his ability to serve impartially. Towns also stated that someone broke into his house four years ago and stole his car, no one was apprehended, and the incident would not affect his ability to be fair and impartial.

*Lavita Bluit* stated that she lived on the west side of the City of Chicago and was unemployed. She said that her hobbies were baseball, volleyball, and baby-sitting. She had never been a juror before, and stated that she could be fair and follow the law as instructed by the judge.

*Eugene Weatherall* informed the court that he had a family member or close friend who was a police officer at the 11th District police station, but that this would not affect his ability to be fair and impartial. Weatherall also stated that his son "got killed and stuck up *** last year," that the case was not pending,

and that the incident would not affect his ability to be fair and impartial. He said that he was an unemployed custodian and that he had lived on the south side, in his own home, for over 20 years. He stated that he had six children, all of them of adult age. He advised the court that he had served on a jury in a civil trial several years ago, and that he believed he could remain fair and impartial if chosen to serve on the present jury.

*Silas Gilty* stated that he had a cousin who was an Oak Park police officer, but that this would not affect his ability to be fair and impartial. Gilty stated that he was 24 years old, single, worked for General Electric, lived in the Austin neighborhood and rented his home.

It is undisputed in this appeal that defendant is African-American. According to the record, the victims were also African-Americans. The record does not disclose the racial composition of the individuals called to testify against defendant at trial.

## Discussion

Defendant contends the trial court's ruling was in error because it failed to apply the standard of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, but rather applied the standard of *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, to the defendant's claim that the State improperly used certain of its peremptory challenges. The State responds that defendant waived this argument by failing to object at trial and in his post-trial motion. The record shows, however, that defense counsel did in fact contemporaneously object to the trial court's alleged use of the *Swain* standard. In his post-trial motion, defendant claimed that the trial court erred when it denied his mistrial motion based on the State's alleged improper use of peremptory challenges to ex-

clude African-Americans from the jury. Thus, the issue
was properly preserved for review. We also find that
the defendant has not waived his claims by failing to
preserve the record. Our review of the trial court's
proceedings reveals sufficient information regarding
the racial composition of the prospective jurors who
were selected or excused in order to permit our consid-
eration of the defendant's claims. See, *e.g.*, *People v.
Henderson* (1990), 142 Ill. 2d 258, 279-83; *People v.
Garrett* (1990), 139 Ill. 2d 189, 197-99 (reviewing rec-
ord to cull information pertinent to defendant's *Batson*
challenge).

A defendant's *prima facie* case of discrimination
under *Batson* must raise, from all the surrounding cir-
cumstances, a reasonable inference that the prosecutor
exercised peremptory challenges to exclude prospective
jurors because of their race. (*People v. Andrews* (1992),
146 Ill. 2d 413, 424 (citing *Batson*, 476 U.S. at 96, 90
L. Ed. 2d at 87, 106 S. Ct. at 1723, and *People v. Ed-
wards* (1991), 144 Ill. 2d 108, 153).) Although it is not
necessary that the defendant prove that he is a mem-
ber of a cognizable racial group with respect to which
the State exercised peremptory challenges in order to
exclude its members from defendant's jury (see
*Andrews*, 146 Ill. 2d at 425, citing *Powers v. Ohio*
(1991), 499 U.S. 400, 402, 113 L. Ed. 2d 411, 419, 111
S. Ct. 1364, 1366), racial identity between the accused
and the excluded prospective jurors remains a signifi-
cant factor in deciding whether a *prima facie* case of
discrimination has been proven (*Andrews*, 146 Ill. 2d at
425, citing *Powers*, 499 U.S. at 416, 113 L. Ed. 2d at
429, 111 S. Ct. at 1373-74). Additional relevant factors
in the determination of whether a *prima facie* case has
been established are whether the State engaged in a
"pattern" of challenges against African-Americans,
whether the State used its peremptories disproportion-

ately against African-Americans, whether the excluded African-Americans were a heterogeneous group that shared race as their only common characteristic, and the nature of the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges. Also significant are considerations such as the level of African-American representation in the venire as compared to the jury, the race of the defendant and the victim, and the race of the witnesses who will testify at defendant's trial. *People v. Williams* (1991), 147 Ill. 2d 173, 220 (citing *People v. Mahaffey* (1989), 128 Ill. 2d 388, 413, and *People v. Evans* (1988), 125 Ill. 2d 50, 63-64).

In light of the precise circumstances in the present case, we believe that the State should have been asked to provide reasons for its peremptory challenges of all of the African-Americans who were peremptorily challenged by the prosecution. As defendant contends, the trial court's remarks in the present case with respect to "systematic exclusion" were reminiscent of *Swain*. The *Swain* decision acknowledged possible constitutional infirmities where a prosecutor engaged in exclusion of African-Americans "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be" (*Swain*, 380 U.S. at 223, 13 L. Ed. 2d at 774, 85 S. Ct. at 837), while *Batson* "changed the burden of proving the State's racial discrimination by allowing a defendant to rely solely on the facts of his case" (*People v. Pecor* (1992), 153 Ill. 2d 109, 123, citing *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723). Although we cannot conclude on the present record that the trial court undertook a strict and literal application of the outdated *Swain* test in the instant cause, we nevertheless find the remarks made by the trial court were improper and misguided. Their occurrence is an integral

part of our decision to remand the matter for further *Batson* proceedings.

We are also persuaded by two additional factors. First, it is noteworthy that the trial court asked the prosecution to state its reasons for the peremptory challenges used to exclude African-Americans. In the usual and proper course of a *Batson* hearing, the trial court will call upon the State to provide reasons for its peremptory challenges only upon a showing of a *prima facie* case by the defendant. This court has already emphasized that this two-step procedure should not be collapsed into a single, unitary disposition that dilutes the distinctions between a defendant's *prima facie* showing of discrimination and the State's production of neutral explanations for its peremptory challenges. (See *People v. Garrett* (1990), 139 Ill. 2d 189, 201.) Also, the United States Supreme Court has observed that the question of whether a defendant has made out a *prima facie* case "becomes moot" when the State has provided race-neutral reasons for its peremptory challenges and the trial court "has ruled on the ultimate question of intentional discrimination." (*Hernandez v. New York* (1991), 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866; see also *People v. Mitchell* (1992), 152 Ill. 2d 274, 289.) In light of this precedent, the trial court's request that the State provide reasons for its use of peremptory challenges further obfuscates an already conflicting record with regard to whether the trial court was properly applying the standard of *Batson*, including whether the trial court found the defendant had established a *prima facie* showing under *Batson*.

As our second consideration, we find it highly significant that the excluded prospective jurors were a heterogenous group that shared race as their only common characteristic. The review of the backgrounds of

the excluded African-American venire members, as set forth more fully above, reveals that there is no single characteristic other than race common to all of the African-Americans who were peremptorily challenged by the State. Also, the record reveals that the excluded African-American venire members shared nonracial characteristics with the other venire members who were accepted by the prosecution, an additional factor with respect to whether there has been a *prima facie* showing of a *Batson* violation. (See *People v. Andrews* (1992), 146 Ill. 2d 413, 432.) In addition, the prosecution used approximately half of its peremptory challenges to excuse African-American prospective jurors, and only three minority prospective jurors were selected to serve on the jury. The exclusion of even one minority venireperson on account of race is unconstitutional (*People v. Harris* (1989), 129 Ill. 2d 123, 175) and would be adequate basis to accord the defendant a new trial in the instant cause.

Generally, a trial court's determination on a *Batson* motion is not subject to reversal upon review unless the court's disposition was against the manifest weight of the evidence. (*Garrett*, 139 Ill. 2d at 200-01.) However, in light of the considerations stated above, the trial court's finding in this case cannot be accorded such deference. In addition, we conclude that there are insufficient facts of record to justify a *de novo*, objective review of the trial court's decision. (See *People v. Pasch* (1992), 152 Ill. 2d 133, 163, *cert. granted* (1993), \_\_\_\_ U.S. \_\_\_\_, 124 L. Ed. 2d 678, 113 S. Ct. 2927; see also *Garrett*, 139 Ill. 2d at 201-02.) We conclude that the trial court's disposition of the defendant's *Batson* motion was erroneous. The circumstances of the present cause were sufficient to establish a *prima facie* case under *Batson*, and the prosecution should have been called upon to provide reasons for its peremptory

challenges of *all* of the African-American prospective jurors excluded by the prosecution.

In accordance with this court's supervisory authority, we vacate the trial court's denial of the defendant's *Batson* motion and remand the cause to the circuit court of Cook County for a hearing with respect to whether the State can produce race-neutral reasons for its exercise of peremptory challenges in the instant cause, and ultimately whether the prosecution's use of peremptory challenges violated the standards of *Batson*. The circuit court shall make proper findings of fact and conclusions of law on these questions, and shall file its findings and conclusions with the clerk of this court within 60 days of this decision, accompanied by a record of the proceedings on remand. See *People v. Andrews* (1989), 132 Ill. 2d 451, 467.

*Cause remanded with directions.*

CHIEF JUSTICE MILLER, dissenting:

I do not believe that the defendant is able to raise a reasonable inference that the prosecutor exercised peremptory challenges to exclude prospective jurors because of their race, a practice forbidden by *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. Accordingly, I would reject the defendant's challenge to the manner in which his jury was selected and would consider now the remaining issues in this capital case.

A defendant raising a *Batson* claim bears the initial burden of establishing a *prima facie* case of discrimination. If the trial judge concludes that a *prima facie* case has been shown, the burden then shifts to the prosecution to advance race-neutral explanations for its exercise of the peremptory challenges at issue. The trial judge must then determine whether the defendant has shown intentional discrimination in the selection of

the jury. *Hernandez v. New York* (1991), 500 U.S. 352, 358-59, 114 L. Ed. 3d 395, 405, 111 S. Ct. 1859, 1866; *Batson*, 476 U.S. at 96-98, 90 L. Ed. 2d at 87-89, 106 S. Ct. at 1723-24.

Determining whether a defendant has established a *prima facie* case of discrimination requires the consideration of a variety of circumstances, including, among other things, the proportionate representation of the particular group in the venire, the number of members of that group ultimately selected to serve as jurors, the heterogeneity of the excluded group members, the ethnicity of the victim and the offender, and the prosecutor's comments during jury selection. See *People v. Peeples* (1993), 155 Ill. 2d 422, 469; *People v. Evans* (1988), 125 Ill. 2d 50, 63-64.

In the present case, there were 14 blacks among the 42 venire members who were not removed for cause by the trial judge. The prosecution excused five of the 14, and the defense excused six; three blacks ultimately served on the defendant's jury. The prosecution exercised a total of 11 peremptory challenges during jury selection. Thus, the prosecution exercised 45% of its challenges against black members of the venire (5 of 11). Blacks made up 33% of the venire (14 of 42), and 21% of the jury, including the two alternate positions (3 of 14). In a case presenting similar statistics, this court upheld a trial judge's determination that the defendant had failed to present a *prima facie* showing of discrimination. *People v. Henderson* (1990), 142 Ill. 2d 258, 280.

The crimes involved in the present case were not interracial, and that circumstance makes it less likely that the prosecutor would have intended to exclude jurors of the defendant's race. (See *Evans*, 125 Ill. 2d at 66.) In addition, the *voir dire* in this case was conducted entirely by the trial judge, and the record is de-

void of any comments by the prosecutor in exercising challenges from which discriminatory intent can be inferred.

The trial judge in the present case rejected the defendant's *Batson* claim. Although the judge did not expressly state that the defendant had failed to establish a *prima facie* case of discrimination, we may infer that this was the court's finding, for the judge did not proceed to the second stage of the *Batson* inquiry. Granting to that finding the customary deference we employ in reviewing *Batson* determinations, I would conclude that the trial judge's ruling was not against the manifest weight of the evidence. (See *People v. Henderson* (1990), 142 Ill. 2d 258, 287; *People v. Garrett* (1990), 139 Ill. 2d 189, 200-01.) The representation of blacks in the venire and on the defendant's jury, the number of challenges exercised by the prosecution to black members of the venire, the shared ethnicity of the defendant and the crime victims, and the absence of any comments by the prosecution suggestive of discrimination—all these circumstances indicate that the defendant could not succeed in establishing a *prima facie* case of discrimination. Thus, even if the trial court's determination in this case is denied the traditional measure of deference accorded to findings of fact, I would conclude, on a *de novo* consideration of the same evidence, that the defendant failed to carry his burden of presenting a *prima facie* case under *Batson.*

On this record, then, the additional grounds suggested by the majority in support of its decision to remand the matter for further proceedings are singularly unpersuasive. The majority first points to remarks by the trial judge that, the majority believes, suggest that the judge could have been using an incorrect standard in determining the defendant's *Batson* claim. On sev-

eral occasions the trial judge referred to the "systematic exclusion" of minority members from the jury. The majority concludes from these remarks that the judge might actually have been applying the outmoded rules of *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, in resolving the defendant's *Batson* claim.

Nothing in the record supports the majority's suggestion that the trial judge failed to correctly apply the requirements of *Batson*. In the present case, the trial judge apparently borrowed the term "systematic exclusion" from comments made by the prosecutor, who was the first to use that locution. As the State suggests, it seems clear that the judge was merely using the word "systematic" as a synonym for "methodical." In similar circumstances, this court has upheld determinations rejecting *Batson* claims notwithstanding a trial judge's use of the term "systematic exclusion" (*People v. Henderson* (1990), 142 Ill. 2d 258, 279), or even defense counsel's use of the same expression (*People v. Edwards* (1991), 144 Ill. 2d 108, 151 (trial judge rejected defense argument, under *Batson,* that State had, as counsel said, " 'systematically excluded black people' " during jury selection)). In denying the defendant's motion for a mistrial under *Batson,* the trial judge here explained, "The Court has in two cases over the past two years declared a mistrial when it has been shown that the State has improperly excused blacks in a systematic manner." The judge did not purport to require the defendant to show systematic exclusion in case after case, as he would have if he had been applying the *Swain* test. There is no support in the record for the majority's belief that the trial judge might have been applying an incorrect standard in determining the defendant's *Batson* challenge.

The majority also notes that the trial judge asked the prosecution to explain its challenges to the black members of the venire. The majority interprets the trial judge's request to mean that the judge might have determined that a *prima facie* case of discrimination had been established and that the judge was then proceeding to the next step in the *Batson* inquiry. I do not agree that the remarks indicate that the judge believed that the defendant had fulfilled his burden of establishing a *prima facie* case of discrimination.

In response to the trial judge's comments, the prosecution offered an explanation for its decision to peremptorily challenge one of the excluded veniremen. The prosecutor said that he believed that the individual was under the influence of drugs or alcohol at the time of *voir dire*. The trial judge agreed that the individual appeared to be impaired, though the judge was not sure whether the impairment was attributable to alcohol or to other causes. Notably, after the State explained the reasons for the challenge to that particular member of the venire, the trial judge did not ask the prosecution to account for any of its remaining challenges to black members of the venire. Had the trial judge intended to move to the next step in the *Batson* inquiry, as the majority believes, the judge would have asked the prosecution to provide explanations for the four other excluded blacks.

Finally, the majority points to the supposed heterogeneity of the excluded venire members as further evidence in support of the defendant's *Batson* claim. But that is only one circumstance that should be considered in determining whether the defendant has met his burden of establishing a *prima facie* case and, even if shown, does not automatically establish such a case. (See *People v. Edwards* (1991), 144 Ill. 2d 108, 154.) As this court has previously recognized, a party may

have different reasons for excluding various members of the venire (*People v. Mack* (1989), 128 Ill. 2d 231, 239), and there is no reason to assume that all the peremptory challenges exercised by a party must be explicable on a single ground. The present case will serve as an illustration. We know from the explanation offered by the State that the prosecutor believed that one of the five blacks excluded from the jury was under the influence of alcohol or drugs at the time of *voir dire*. That particular juror was also unemployed. According to the *voir dire* examinations of the four other black members of the venire peremptorily challenged by the State, two rented their residences, one was unemployed, and one had served on the jury in a robbery case only two years before the present trial. As these circumstances indicate, the heterogeneity of the excluded members of the venire might simply mean that the prosecution had different reasons for its exercise of peremptory challenges against different persons. See *People v. Henderson* (1990), 142 Ill. 2d 258, 289-90.

In sum, I would conclude that the trial judge properly denied the defendant's *Batson* motion. Unlike the majority, I do not believe that the trial judge's comments at the hearing indicate either that the judge might have been applying an incorrect standard in determining the defendant's claim, or that the judge might have found a *prima facie* case to exist. Nor do I agree with the majority that the various characteristics of the excluded minority members of the venire provide significant support for the defendant's contention. The trial judge's *Batson* ruling was not against the manifest weight of the evidence, and I would consider now the defendant's remaining allegations of error.